UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Antoine Conley,

                Petitioner,    Case No. 14-cv-11464

v.                                    Judith E. Levy
                                       United States District Judge

Lloyd Rapelje,

                                      Mag. Judge R. Steven Whalen

                Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS [1] WITH PREJUDICE, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

      Petitioner Antoine Conley filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions of unlawful imprisonment, felonious assault, domestic violence (third offense), felon in possession of a firearm, and possession of a firearm during a felony. For the reasons set forth below, the petition is denied.

**I.    Background**

      This Court recites verbatim the relevant facts relied on by the Michigan Court of Appeals, which are presumed correct on habeas

review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

> This 2011 prosecution stems from events occurring on or about 2011 New Year's Day. Early in the morning of January 1, 2011, the victim, defendant's girlfriend, was spotted on the side of road by a passing motorist. She told the motorist that defendant had beaten her, and she asked to be taken to her mother's home. The victim's mother testified that her daughter said defendant beat her with a gun, tore off her clothes, and forced her into a closet at her residence. The police were called and arrived thereafter. A police officer testified that the victim told him how defendant had beaten her with his fists and a gun, how he had torn off her clothing, and how he had forced her into a closet and would not allow her to leave. At the hospital, the same officer asked her to write out her prior statement, which she did. The emergency room physician who attended to the victim testified that her injuries were consistent with blunt-force trauma. Defendant was subsequently apprehended as he slept at the victim's residence. A loaded semiautomatic pistol was found under his bed. Bullets were found in a crawlspace, and one was found in a child's car seat.
>
> At trial, the victim testified to a lack of memory of the events of New Year's. She believed she had been intoxicated at the time. She recognized her handwritten police statement but testified to a lack of memory with respect to writing it. She did remember, however, that a police officer told her that he would not leave the hospital until she wrote out a statement. She denied that the officer told her what to write. . . .

> Testimony introduced at trial indicated that defendant assaulted the victim sometime between 2 a.m. and 4 a.m. and that until she fled, she was in a closet and threatened with further violence if she left the closet. Defendant had also been brandishing a loaded gun. Around 7 a.m., a motorist saw the victim on the side of the road trying to flag someone down. He described her as disheveled, disoriented, and "[s]omewhat hysterical." He then drove her to the home of her mother, who described her daughter as crying and half-dressed, with her "hair falling out" and her eyes swollen nearly shut. The victim's mother believed that the victim was panicked and scared, not knowing what to do. Subsequently, the victim was interviewed by a police officer, who described her as shaking and crying with marks, bruises, and cuts on her. There was no evidence that the victim engaged in ordinary activities, consulted others, or contemplated her story between the assault and her disclosures.

*People v. Conley*, No. 304309, 2012 Mich. App. LEXIS 2053, at *1-2, 5-6 (Mich. Ct. App. Oct. 18, 2012).

Petitioner was convicted by a jury in St. Clair County Circuit Court of unlawful imprisonment, MICH. COMP. LAWS § 750.349b, felonious assault, MICH. COMP. LAWS § 750.82, assault and battery of an individual with whom he has or has had a dating relationship, third offense, MICH. COMP. LAWS § 750.81(4), felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the

commission of a felony ("felony firearm"). MICH. COMP. LAWS § 750.227b. (*See* Dkt. 8-6.) On May 9, 2011, he was sentenced, as enhanced by habitual offender, fourth, to concurrent prison terms of fifteen to twenty-five years for unlawful imprisonment, three to fifteen years for felonious assault imprisonment, three to fifteen years for domestic violence imprisonment, and six to ten years for felon in possession of a firearm imprisonment. (Dkt. 8-7 at 8-9.) He was also sentenced to two years for felony firearm, to run consecutive to the unlawful imprisonment, felonious assault, and felon in possession sentences. (*Id.* at 9.)

Petitioner filed an appeal of right in the Michigan Court of Appeals, arguing that: the victim's hearsay statements were improperly admitted; there was insufficient evidence to support a conviction of unlawful imprisonment; there were evidentiary errors; the prosecutor committed misconduct; the trial court erred in denying motion to suppress; and the victim's written statement was improperly admitted. (Dkt. 8-8 at 8-31.) The Michigan Court of Appeals denied Petitioner's claims and affirmed his convictions and sentences. *Conley*, 2012 Mich. App. LEXIS 2053, at *18.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims that he raised in the Michigan Court of Appeals. (Dkt. 8-9 at 2-19.) The Michigan Supreme Court summarily denied leave to appeal. *People v. Conley*, 494 Mich. 852 (2013).

Petitioner then filed the pending habeas petition, raising two claims he previously raised in the state courts: the prosecutor committed misconduct during her closing argument; and there was insufficient evidence to convict for unlawful imprisonment. (*See* Dkt. 1.)

## II. Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), a federal court can order habeas relief only if the state's adjudication of a claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). When applying these standards, this Court is to examine the holdings of

the Supreme Court as they existed at "the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The district court can, however, "look to decisions of other courts to determine whether a legal principle has been clearly established by the Supreme Court." *Hall v. Vasbinder*, 563 F.3d 222, 232 (6th Cir. 2009); *Smith v. Stegall*, 385 F.3d 993, 998 (6th Cir. 2004).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 103 (internal quotation omitted).

### III. Analysis

#### *a. Prosecutorial misconduct claim*

Petitioner argues that the prosecutor committed misconduct during her closing argument. According to Petitioner, the prosecutor incorrectly "stated that [the victim]'s injuries were consistent with

6

'blunt force trauma as inflicted with this pistol,'" which unconstitutionally prejudiced him. (Dkt. 1 at 22.) The Michigan Court of Appeals denied this same claim on the merits:

> At trial, the emergency-room physician testified that the victim's wounds were "consistent with most likely some sort of blunt force trauma." During closing argument, the prosecutor stated,
>
>> [The physician] testified that [the victim's] wounds were consistent with blunt force trauma, not a fist fight, not with bumping into a chair or a table, but with blunt force trauma. Blunt force trauma as inflicted with this pistol.
>
> In reviewing the actual remarks in context, we find no grounds for reversal. The prosecutor was free to argue that the doctor's finding that the wounds were consistent with blunt force trauma confirmed the victims statement to the police as well as her written statement.
>
> In any event, even if [] it could be construed that the prosecutor was misstating the essence of the physician's testimony, the jury was properly instructed that it alone was to decide the facts of the case based on admissible evidence, where "[t]he lawyers' statements and argument are not evidence" and that the jury "should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge." Because "[i]t is well established that jurors are presumed to follow their instructions," *People v Graves*, 458 Mich 476, 486; 581 NW2d

>  229 (1998), even if there were any inappropriate remarks, the instructions to the jury cured any error.

*Conley*, 2012 Mich. App. LEXIS 2053, at *15-16.

The Court has reviewed the record, and the facts as written by the state court are accurate. (*See* Dkts. 8-4 at 140 (doctor's trial testimony), 8-5 at 152 (prosecutor's closing argument related to doctor's trial testimony).) In fact, Petitioner also quotes those same parts of the record. (*See* Dkt. 1 at 22.) Based on these facts, the state court's decision on the merits was not unreasonable.

The prosecutor essentially argued in closing that the victim's injuries were consistent with being struck by a pistol, which was a reasonable inference from the physician's testimony that the injuries were consistent with blunt force trauma. "A prosecutor may argue reasonable inferences from the evidence at closing argument." *Amos v. Renico*, 683 F.3d 720, 730 (6th Cir. 2012). And as noted by the state court, the jury was instructed that the prosecutor's arguments could not be evidence. Minor improprieties in a closing argument—which in any case does not seem to be the situation here—can be corrected by a jury instruction that closing arguments are not evidence. *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011). Fairminded jurists could

8

disagree on the correctness of the state court's decision. Thus, habeas relief cannot be granted on this claim.

### *b. Sufficiency of the evidence claim*

Petitioner argues that there was insufficient evidence to convict him of "knowingly restrain[ing] another person . . . . by means of a weapon or dangerous instrument." (Dkt. 1 at 29-38 (quoting MICH. COMP. LAWS § 750.349b(1)(a)).) According to Petitioner, the victim's out-of-court statements, introduced at trial through the testimony of other witnesses, were hearsay from "an[] unreliable source" that should not have been admitted at trial. (*Id.* at 35-38.) Petitioner argues that because the victim's statements were inconsistent and otherwise unreliable, they were thus insufficient to support the central allegations of the charge. (*Id.* at 32-35.) Notably, Petitioner "does not contest . . . . that the jury could have drawn reasonable inferences from the facts that he could have possessed a dangerous weapon." (Dkt. 1 at 31.)

As to the hearsay argument, Petitioner made these arguments on direct appeal. The Michigan Court of Appeals rejected the claim on the merits:

> Defendant first argues that the trial court erred in admitting testimony by the motorist and the victim's mother regarding

9

what the victim told them on January 1. We disagree, and conclude that the trial court properly admitted these statements under the "excited utterance" exception to the hearsay rule, MRE 803(2). A trial court's decision on an evidentiary issue is reviewed for an abuse of discretion. *People v Holtzman*, 234 Mich App 166, 190; 593 NW2d 617 (1999). The trial court does not abuse its discretion when its decision in within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). . . .

Testimony introduced at trial indicated that defendant assaulted the victim sometime between 2 a.m. and 4 a.m. and that until she fled, she was in a closet and threatened with further violence if she left the closet. Defendant had also been brandishing a loaded gun. Around 7 a.m., a motorist saw the victim on the side of the road trying to flag someone down. He described her as disheveled, disoriented, and "[s]omewhat hysterical." He then drove her to the home of her mother, who described her daughter as crying and half-dressed, with her "hair falling out" and her eyes swollen nearly shut. The victim's mother believed that the victim was panicked and scared, not knowing what to do. Subsequently, the victim was interviewed by a police officer, who described her as shaking and crying with marks, bruises, and cuts on her. There was no evidence that the victim engaged in ordinary activities, consulted others, or contemplated her story between the assault and her disclosures. *See People v Hackney*, 183 Mich App 516, 525-526; 455 NW2d 358 (1990); *People v Petrella*, 124 Mich App 745, 759-761; 336 NW2d 761 (1983).

> Defendant first claims that the excited utterance exception does not apply because of the elapse of time between the alleged incident and the making of the statements. However, contrary to defendant's claim, the evidence demonstrated that the victim was still under the influence of the stressful event at the time she made her out-of-court statements. The trial court, therefore, did not abuse its discretion in admitting the statements under the excited utterance exception.
>
> Defendant further argues that the victim's statements to her mother were the product of conscious reflection with the capacity to fabricate because they came in response to questioning by the mother. However, statements are not rendered inadmissible under the excited utterance exception merely because they were made in response to questions. *Smith*, 456 Mich at 553. As we noted earlier, the key focus is whether the statement was made under the stress of the underlying event. *Id.* at 553-554. Here, the victim's mother did not definitively testify that she questioned the victim when she showed up at her home. Instead, when asked whether she had asked her daughter what had happened to her, the victim's mother responded that her daughter told her defendant had assaulted her. Nonetheless, even if the witness had asked "what happened," the question did not require the victim to set aside her emotional state to reflect on what transpired. In short, "there is nothing about the mother's inquiries in the present case that undermines confidence in the conclusion that the complainant's statement resulted from the stress of the assault and not from the 'stress' of [her] mother's inquiries." *Id.* at 554.

*Conley*, 2012 Mich. App. LEXIS 2053, at *2-7.

To be sure, the several hours that elapsed between the time the victim fled Petitioner and the time that she made her statements to others allow for the "possibility of fabrication, coaching, or confabulation." *Idaho v. Wright*, 497 U.S. 805, 820 (1990). But on habeas review under AEDPA, this Court reviews whether fair minded jurists could disagree regarding the state court's decision.

The state court reasoned that the victim was still under the stress of the underlying event when she made her statements to the other witnesses. According to the state court, the victim was disheveled, disoriented, and hysterical when she made her statements to the motorist who testified. And she was crying and seemed panicked and scared, not knowing what to do, when she made her statements to her mother. Finally, she was shaking and crying when she made her statements to the police officer, and there was no evidence that the victim engaged in ordinary activities, consulted others, or contemplated her story between the assault and her disclosures.

Here, fair minded jurists could disagree that this evidence was sufficient to overcome the hearsay issues, and thus habeas relief cannot be based on the trial court's admission of this testimony. *See, e.g.*,

12

*United States v. Arnold*, 486 F.3d 177, 212 (6th Cir. 2007) (because "record contains no independent evidence of [defendant's] alleged gun-brandishing, or *any* evidence of the amount of time that elapsed between [the victim]'s altercation with [defendant] and her 911 call . . . . the government cannot carry its burden of establishing that [the victim]'s claim that [defendant] pulled a gun on her 'contain[s] inherent guarantees of truthfulness,' *Haggins*[ *v. Warden, Ft. Pillow State Farm*, 715 F.2d 1050, 1057 (6th Cir. 1983)], or that there was no 'possibility of fabrication,' *Wright*, 497 U.S. at 820") (Moore, J., dissenting). The issue is thus whether there was sufficient evidence, including the hearsay testimony, to convict Petitioner.

This claim was also considered by the Michigan Court of Appeals and denied on the merits:

> [D]efendant argues that his conviction of unlawful imprisonment is not supported by sufficient evidence. In determining whether the prosecutor has presented sufficient evidence to sustain a conviction, we must take the evidence in the light most favorable to the prosecutor to ascertain whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn, when viewed in a light most favorable to the prosecution, are considered to determine whether the

evidence was sufficient to support defendant's conviction. *People v Hardiman*, 466 Mich 417, 429; 646 NW2d 158 (2002).

Defendant was convicted of unlawful imprisonment under MCL 750.349b(1)(a), which provides that "[a] person commits the crime of unlawful imprisonment if he or she knowingly restrains another person . . . by means of a weapon or dangerous instrument." (Paragraph structure omitted.) "Restrain" means "to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority." MCL 750.349b(3)(a).

Defendant argues that there was insufficient evidence to establish that any unlawful imprisonment was accomplished "by means of a weapon or dangerous instrument," because no fingerprints, blood, or tissue were found on the gun. However, a fingerprint expert explained how it was possible to not have fingerprints on a gun that had been touched. Further, the pistol was found by police under the bed, a foot from the edge, on which defendant was sleeping when he was detained. Additionally, three witnesses, the victim's mother, a police officer, and an emergency room nurse, testified that the victim told them that defendant beat her with a gun and forced her to stay in a closet by threatening to further use the gun on her. The victim also told the emergency room physician that her face was beaten with a pistol, and the physician found facial wounds consistent with blunt-force trauma. Therefore, viewing the evidence in a light most favorable to the prosecution, we conclude that the evidence presented was sufficient a rational trier of fact

14

could find the defendant guilty beyond a reasonable doubt. *Tennyson*, 487 Mich at 735.

*Conley*, 2012 Mich. App. LEXIS 2053, at *7-9.

On direct review, the Court weighs a sufficiency of the evidence challenge by deciding whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). On habeas review under AEDPA, "[t]wo layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court must apply the *Jackson* standard. *Brown*, 567 F.3d at 205 (citing *Jackson,* 443 U.S. at 319). Second, even if the Court were "to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt . . . , [the Court] must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in original).

As quoted above, the Michigan Court of Appeals rejected Petitioner's argument that no fingerprints, blood, or tissue were found on the gun. The court based its decision on competent trial evidence

15

that the pistol was found under the bed in which Petitioner was sleeping, it was possible that Petitioner's fingerprints would not be on the gun even if he had touched it, the victim contemporaneously told three witnesses that Petitioner had beaten her with a gun, and that the victim's facial wounds were consistent with blunt-force trauma.

"[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326). Assuming, as this Court must, that the jury found the testimony cited by the Michigan Court of Appeals credible, the evidence presented at trial allowed the factfinder to determine beyond a reasonable doubt that Petitioner knowingly restrained the victim by means of a pistol. Moreover, the state court was not unreasonable for finding so. Thus, habeas relief cannot be granted on this claim.

## IV. Conclusion

The petition for a writ of habeas corpus (Dkt. 1) is DENIED WITH PREJUDICE.

The Court also denies a certificate of appealability. In order to obtain a certificate of appealability, Petitioner must make "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Under this standard, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 483 (2000) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)). This determination "requires an overview of the claims in the habeas petition and a general assessment of their merit," but "does not require a showing that the appeal will succeed." *Miller-El v. Cockrell,* 537 U.S. 322, 337 (2003). Petitioner fails to make a substantial showing of the denial of a federal constitutional right. Reasonable jurists would not find the Court's assessment of Petitioner's constitutional claims debatable or wrong.

Finally, the Court denies leave to proceed *in forma pauperis* on appeal. A court may grant *in forma pauperis* status if the court finds that an appeal would be taken in good faith. *See* 28 U.S.C. § 1915(a)(3); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) ("The standard for issuing a certificate of appealability has a higher threshold than the standard for granting *in forma pauperis* status, which requires showing that the appeal is not frivolous.") (citing *United States v. Youngblood,* 116 F.3d 1113, 1115 (5th Cir. 1997)). Because an appeal could not be taken in good faith here, Petitioner may not proceed *in forma pauperis* if he wishes to appeal this decision. *Id.*

IT IS SO ORDERED.

Dated: January 3, 2017  s/Judith E. Levy
Ann Arbor, Michigan  JUDITH E. LEVY
 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 3, 2017.

 s/Felicia M. Moses
 FELICIA M. MOSES
 Case Manager